IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAUNEE SMITH,** *Plaintiff,* | : : : : | **CIVIL ACTION** No. 24-253 |
| v. | : : | |
| **THE PROGRESSIVE CORPORATION & JOHN DOE 1,** *Defendants.* | : : : : : | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                          **SEPTEMBER 4, 2025**

Plaintiff Launee Smith was working as a ride-share worker for Lyft, Inc. when she was struck by an unknown motorist. Lyft had an insurance policy with The Progressive Company. While Progressive does not dispute that Smith was a beneficiary under that policy, they argue that Smith is not entitled to benefits due to Lyft's waiver of uninsured motorist benefits. Smith brought this claim asserting that Lyft's waiver was invalid under the Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), and that she is entitled to benefits under the policy. 75 Pa. C.S.A. § 1731(b). Progressive moves to dismiss the Complaint arguing: (1) United, the underwriter of the Progressive policy, is the proper defendant, and (2) the waiver is valid. Because Smith has failed to sufficiently allege the waiver was improper under the MVFRL, Progressive's motion will be granted.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This case was originally brought against Progressive, the unidentified driver that hit Smith (John Doe 1), and the now-terminated defendant USAA Casualty Insurance Company. All that

1

remains is the present dispute between Smith and Progressive concerning benefits Smith alleges she is owed through Lyft's insurance policy. Lyft is not a party to this case.

Insurance policies in Pennsylvania are not required to include uninsured motorist benefits. Nonetheless, under the MVFRL, policyholders must still explicitly reject coverage by signing specific waiver language which states "[b]y signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household." 75 Pa. C.S.A. § 1731(b).

Progressive and Lyft entered into a commercial auto insurance contract on August 28, 2019 to apply from October 1, 2021 to October 1, 2022. (Pl's Resp. Exh. B, at 2, Exh. C at 2 ( ECF 28); Def.'s Exh. B, at 2, (ECF 25).)[1] This contract contained a "waiver" that reduced the amount of uninsured motorist benefits to $35,000. This waiver was signed by Lyft's vice president, Curtis Scott. (Id. at 6.) On March 25, 2020, Lyft and Progressive executed an endorsement that "modifie[d] insurance provided under the Commercial Auto Policy" issued to Lyft for the period between October 1, 2021 and October 1, 2022. (Pl's Resp. Exh. C, at 3, 11; (ECF 28-5).) As part of that endorsement, Curtis Scott on behalf of Lyft, signed a waiver "rejecting uninsured motorist coverage under [the] policy, for myself and all relatives residing in my household." Id. at 14–15.

---

[1] In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). The documents cited here are versions of the Insurance Coverage Summary of Progressive's Policy with Lyft, which is the policy that allegedly gives rise to the claims contained in the complaint. Plaintiff's Exhibit C and Defendant's Exhibit B are identical documents, which contain a certification that they are authentic. Plaintiff's Exhibit B is nearly identical to the other exhibits, except that it omits pages and contains a different waiver page. Compare Pl's Resp. Exh. B, at 4-6, with Pl's Resp. Exh. C at 14-15. These documents are relied upon by both parties, and neither side disputes that they are authentic and that it is proper for me to consider them.

On February 20, 2022, Smith was transporting two passengers as a driver for Lyft, when she was struck by an unknown driver. Smith alleges that the force of the collision resulted in her car crashing it into a guardrail, causing her "serious, disabling and permanent" personal injuries. (Compl., ¶ 14.) The unknown driver was never identified.

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

To determine the sufficiency of a complaint under Iqbal, I must "tak[e] note of the elements a plaintiff must plead to state a claim" and identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). "[W]here there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

## III.  DISCUSSION

Smith alleges, and Progressive has not disputed, that "as an employee of Lyft" she was covered by Lyft's policy with Progressive. The sole issue in dispute is whether Lyft's wavier of uninsured motorist coverage is valid as applied to Smith. (ECF 1, ¶¶ 20, 23.)

Smith argues that Lyft's March 25, 2020 wavier is not applicable to her because: (1) it covered the same time period as the August 28, 2019 waiver while providing different material terms, (2) Progressive failed to notify her as to Lyft's waiver, (3) she was not "a relative" of Lyft,

3

and (4) the waiver was against public policy. Additionally, she argues that Progressive acted in bad faith in rejecting her claim. I address each of Smith's arguments in turn.

### A. Waiver Under Section 1731(b)

Pennsylvania courts treat contract interpretation questions as questions of law of which plaintiffs are not entitled to the presumption of truth. Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011) (applying Pennsylvania law). Terms are construed "in their natural, plain, and ordinary sense" meaning. Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa. 1999). If an insurance policy's language is clear and unambiguous, the plain meaning of the terms control. 401 Fourth Street v. Inv'rs Ins. Grp., 879 A.2d 166, 170 (Pa. 2005). However, if the policy language is ambiguous, courts will generally resolve that ambiguity in favor of the insured. Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 677 (3d Cir. 2016) (applying Pennsylvania law). "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Madison Const. Co., 735 A.2d at 106 (quoting Hutchison v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986)). However, a court will not strain to find ambiguity where none exists. See id.

Smith first argues that because two policies were simultaneously in effect between Lyft and Progressive, any ambiguity between the two policies should be resolved in her favor. (Pl's. Resp., at 3 (ECF 28-1).) Smith is incorrect that there were overlapping policies. Rather, the March 25, 2020 document is a modification of the original policy which was entered into on August 28, 2019. See Friday v. Regent Improvement Co., 199 A. 914, 916 (Pa. 1938) ("It is an elementary proposition that any contract can be modified with the assent of both contracting parties . . . .") Smith does not allege that Lyft's modification was improper. As such Smith has not identified any

ambiguity that could be resolved in her favor. As to the wavier of uninsured motorist benefits, the March 25, 2020 endorsement controls.

Smith next argues that Progressive's rejection was invalid, because the rejection did not "strictly comply" with the MVFRL. (Pl.'s Resp., at 3 (ECF 28-1).) Specifically, Smith asserts that Lyft's rejection lacked sufficient clarity and failed to put her on notice of her rights. Accepting both assertions as true, Smith has not demonstrated her entitlement for relief. The MVFRL requires only that the named insured—here, Lyft—be informed of their right to reject uninsured motorist coverage and that waiver must be "signed by the first named insured." 75 Pa. C.S.A. 1731(c.1). Smith has not established any legal obligation on the part of Progressive to place her on notice of Lyft's rejection.

Third, Smith argues that the waiver does not apply to her as she is not a "relative[] residing in [Lyft's] household." (Pl.'s Resp., at 4 (ECF 28-1).) Specifically, Smith argues that because the MVFRL's statutory waiver language identifies only members of the same household, the statute does not allow waiver by a corporation on behalf of its employees. However, Pennsylvania courts, the Third Circuit, and district courts have all found this language, which is taken directly from the MVFRL, to allow corporations to waive insurance on behalf of employees. See DiBartolo, 171 F.3d at 171 (predicting the Pennsylvania Supreme Court would find the same language valid and noting it "unremarkable" that a corporation could wave uninsured motorist coverage on behalf of employees under the MVFRL); see also Blakney v. Gay, 657 A.2d 1302 (Pa. Super. Ct. 1995) (holding rental company can issue waiver under MVFRL); Caron v. Reliance Ins. Co., 703 A.2d 63 (Pa. Super. Ct. 1997) (finding identical waiver language to apply to employee operating non-company vehicle). The "linguistic style of the rejection form"—i.e. its discussion of "households" and "family members"—is "designed for easy comprehension" and does not evidence the

Pennsylvania General Assembly's intent to prohibit corporations from executing a waiver. See DiBartolo, 171 F.3d at 171(citations omitted).

Finally, Smith appears to argue that allowing Lyft, an out-of-state corporation, to waive uninsured motorist coverage for Pennsylvania employees, is against public policy. Smith cites no case law in support of this argument. To the contrary, as previously stated, the MVFRL applies to employees of corporations, and courts have found it unremarkable that the insured could be an out-of-state corporation. See e.g., Caron, 703 A.2d at 64 (noting plaintiff's employer was an out-of-state corporation and holding MVFRL applied).

### B. Bad Faith Claim

Smith claims that Progressive acted in bad faith by not properly investigating or fairly evaluating her claim. However, because Smith was not entitled to uninsured motorist benefits under the policy, Progressive was not under an obligation to investigate or evaluate Smith's claims. See Cozza v. State Farm Fire & Cas. Co., 440 F. App'x 73, 75–76 (3d Cir. 2011).

### IV. CONCLUSION

Accepting Smith's factual allegations as true, she has failed to state a claim for relief. Progressive's motion to dismiss will be granted. Progressive will be dismissed with prejudice. An appropriate order follows.